260 So.2d 898 (1972)
Clifford H. SEXTON, Appellant,
v.
PANNING LUMBER COMPANY, a Florida Corporation, and the Atlantic Chemicals, Inc., a Florida Corporation, Appellees.
No. 70-415.
District Court of Appeal of Florida, Fourth District.
January 21, 1972.
Rehearings Denied May 4, 1972.
William Whitaker, and Karl O. Koepke, of Whitaker & Koepke & Associates, Orlando, for appellant.
*899 Russell Troutman, of Law Offices of Russell Troutman, Winter Park, for appellee Panning Lumber Co.
B.C. Pyle, of Whittaker, Pyle & Stump, Orlando, for appellee Atlantic Chemicals.
WALDEN, Judge.
This is an appeal by plaintiff from an order granting the defendants a new trial in a negligence action.
Plaintiff, Clifford H. Sexton, sued the defendants, Panning Lumber Company and The Atlantic Chemicals, Inc., Florida corporations. The suit was based upon a claim of personal injuries which were suffered as a consequence of the improper chemical treatment of certain lumber being used by plaintiff. The case was tried to a jury and judgment was entered in favor of plaintiff. Forasmuch as the record shows, there was no error or complaint made as to the way the actual trial was conducted, the liability, the sufficiency of the evidence, or as to the amount of damages. The appellate problem centers upon the identity or name of the defendant, Panning Lumber Company, and the trial court decisions concerning it.
The complaint named and process was served upon defendant, "Panning Lumber Company." As events later disclosed, this defendant should have been denominated as "Panning Lumber and Supply Company." In the six years preceding trial this defendant so named and served never objected to the omission of the words, "and supply", in its corporate name and for reasons best known to it never directed attention by pleading or otherwise to the fact that it was misnamed or that another corporation was involved in its stead.
On the day of trial plaintiff moved the court to permit the amendment of this defendant's name so as to reflect "Panning Lumber and Supply Company." This motion was denied, whereupon plaintiff filed an interlocutory appeal which was later dismissed without a ruling or opinion on the merits. The trial was not stayed pending the interlocutory appeal and the outcome in favor of plaintiff resulted.
Two post-judgment trial court orders reflect the problem. On February 23, 1970, the court entered an order which quite correctly amended the pleadings and process to accurately name this particular defendant. We approve that decision and reasoning, as follows:
"The manifest weight of the evidence is that Panning Lumber and Supply Company was the corporate entity the Plaintiff intended to sue for the alleged tort set forth in the complaints as amended. The service of process was made upon the President of Panning Lumber and Supply Company at its office at 5018 West Colonial Drive, Orlando, Florida. The President of Panning Lumber and Supply Company was also the President of Panning Lumber Company at the time of the service of process. Further, the evidence reveals that Panning Lumber and Supply Company owned 90 per cent of the stock in Panning Lumber Company. From the evidence the President knew that the corporation intended to be sued by Plaintiff was Panning Lumber and Supply Company. This is so, because all business dealings of Plaintiff's employer were with Panning Lumber and Supply Company at its store in Orange County, Florida, rather than with Panning Lumber Company whose sole place of operation was in Kissimmee, Osceola County, Florida. The lumber, the subject matter of this suit, was processed and sold to Nadar Construction Company by Panning Lumber and Supply Company. The Plaintiff himself never dealt with Panning Lumber Company but dealt regularly with Panning Lumber and Supply Company during September, 1963. Furthermore, the President of Panning Lumber and Supply Company was made aware of the occurence from which this suit arose within two days after its happening. It further appears from the evidence that Panning Lumber and Supply *900 Company engaged the expert witnesses who ran chemical tests on the wood, the subject matter of this suit. It further appears from the record that on discovery, Panning Lumber Company produced the records of Panning Lumber and Supply Company.
"It appears to the Court that, considering all of the foregoing facts, the designation of `Panning Lumber Company' rather than `Panning Lumber and Supply Company' was a misnomer on the part of Plaintiff in naming the corporate defendant he intended to sue. See F.F. L'Engle v. Florida Central & Western Ry. Co., 21 Fla. 353; Procter v. Wells Bros. Co. [262 Ill. 77], 104 N.E. 186 (Ill.); Freeman on Judgments, 5 Ed., par. 415; 39 Am.Jur. 982; 67 Corpus Juris Secundum [Parties § 148, p.] 1150.
"The Court holds, as a matter of law, that under the facts and circumstances set forth above, Panning Lumber and Supply Company had a duty to appear by its correct name. Our Supreme Court in Stewart v. Preston [80 Fla. 473, 479], 86 So. 348 (Fla.), said:
If a person is sued and process is served upon him by a wrong name, he is not thereby deprived of his right to appear and defend the action; neither is he required to appear by a name not his own; but it is his right and his duty (emphasis supplied) to appear by his correct name. The object of the process of the Court is to produce the person, not the name by which he may be sued, in court. Under the old English practice, the defendant was required to visibly appear in court, and our method of appearance is only a substitute for the ancient practice.
"Under the common law practice, if there was a mistake of identity, upon the visible appearance of the wrong person summoned, the Plaintiff would have to initiate new proceedings entirely. In this modern day of commerce when we have `chain stores' or similar types of operations, using the same generic name, with each store being a separate corporation, it is the duty of such a corporation to reveal by its answer whether there is a misnomer or mistake in identity, if such be the case. Particularly is this true because of the `invisible entity' of the corporate structure and similarity of corporate names as in this case.
"In Cabot v. Clearwater Construction Company, 89 So.2d 662 [Fla.], while discussing the change in our modern Rules of Civil Practice and Procedures as it relates to misnomers, Justice Thornal said:
Now the objective of all pleadings is merely to provide a method for setting out the opposing contentions of the parties. No longer are we concerned with the `tricks and technicalities of the trade.' The trial of a lawsuit should be a sincere effort to arrive at the truth. It is no longer a game of the maneuver captures the prize.
"This Court denied Plaintiff's Motion for Leave to Amend nunc pro tunc at the beginning of the Trial. At the time of the denial the Court was not advised as to the law relating to misnomers. At the same time the Court denied Defendant's Motion for Judgment on the Pleadings on the grounds Plaintiff had sued the wrong corporation.
"Since the Court has heard all the evidence it is crystal clear that this is a case of misnomer.
"IT IS THEREFORE ORDERED AND ADJUDGED that the process and pleadings herein be, and they are hereby amended by substituting the name `Panning Lumber and Supply Company' wherever the name `Panning Lumber Company' appears.
"In considering the Motion for Directed Verdict the Court is of the opinion that notwithstanding the amendment in the name, the evidence is such as to preclude the granting of the Motion for Directed *901 Verdict in favor of Panning Lumber and Supply Company.
"In considering the companion Motion of the Co-Defendant, Atlantic Chemicals, Inc., the Court is of the opinion that the evidence is such as to preclude the granting of its Motion for Directed Verdict."
Additional considerations supportive of the amendment are these:
1. The defendants nowhere suggest a lack of knowledge as to the corporate entity intended or surprise on their part as to the real parties in interest and nowhere suggest that they have been in any way prejudiced by this insignificant misnomer. Thus an error or omission, such as this, constituted at best only harmless error. Galuppi v. Viele, Fla.App. 1970, 232 So.2d 408; F.R.C.P. 1.190(b) & (e), 30 F.S.A. Further, there would be no profit to be gained under the circumstances for a remand and new trial where the only change would be the addition of the two missing words in the defendant's full name.
2. The corporate purpose of the two corporations were identical.
3. The president of both corporations was Melvin E. Panning and he was the person served with process.
4. The stockholders of the two corporations were virtually identical. For example, the Panning brothers owned 596 shares of the total 600 shares in Panning Lumber and Supply Company. They were listed as President and Vice President and two of the three stockholders of Panning Lumber Company.
5. The truck delivering the lumber in question had a sign on its side reading, "Panning Lumber Co."
6. The common name of Panning Lumber and Supply Company was just Panning Lumber or sometimes Panning Lumber Company. Both laymen and employees referred to the company in this manner. Mr. Broom, a carpenter working with the plaintiff, said:
"Q. And do you happen to know whether that particular lumber yard is operated by Panning Lumber Company or Panning Lumber and Supply Company?
"A. The way I know it is Panning Lumber, sir."
Mr. Rarick, an employee of Panning Lumber and Supply Company, also said he worked for Panning Lumber.
Mr. Leroy Conley, a former truck driver, testified as follows:
"Q. What is your occupation?
"A. Well, I was employed at Panning Lumber Company as a truck driver.
* * * * * *
"Q. Do you happen to know the full name of Panning Lumber Company on Colonial Drive?
"A. Panning Lumber and Supply Company.
"Q. How do you happen to know that?
"A. Well, that's what was on my pay-checks."
7. The lumber in question was stamped Panning Lumber, 3-min. dip. This was verified from several sources.
8. There was some transfer of materials and merchandise between the various yards and companies. Richard Panning admits this, but says the transfers were always sales with receipts and bills.
Mr. Rarick talks about this practice.
"Q. How many locations do you transfer lumber to and from, Mr. Rarick?
"A. I don't understand your question.
"Q. Well, there are four yards, four or five yards, correct?
"A. Yes, sir.

*902 "Q. Do you frequently take lumber from one yard to the other?
* * * * * *
"A. I have in the past.
* * * * * *
"Q. Kissimmee, Fern Park, West Colonial, Titusville, Cocoa?
"A. Yes, sir.
"Q. All of them interchange?
* * * * * *
"Q. Interchange lumber and other building materials between different yards?
"A. Normally, I think... ."
From all the foregoing, we are of the firm opinion that the amendment should have been permitted before and after trial under the provisions of F.R.C.P. 1.190(b) and (e), which provide:
"(b) Amendments to Conform with the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend shall not affect the result of the trial of these issues. If the evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended to conform with the evidence and shall do so freely when the merits of the cause are more effectually presented thereby and the objecting party fails to satisfy the court that the admission of such evidence will prejudice him in maintaining his action or defense upon the merits."
"(e) Amendments Generally. At any time in furtherance of justice, upon such terms as may be just, the court may permit any process, proceeding, pleading or record to be amended or material supplemental matter to be set forth in an amended or supplemental pleading. At every stage of the action the court must disregard any error or defect in the proceedings which does not affect the substantial rights of the parties." (Emphasis supplied.)
See the cases of Richards v. West, Fla. App. 1959, 110 So.2d 698; McNayr v. Cranbrook Investments, Inc., Fla. 1963, 158 So.2d 129; Galuppi v. Viele, supra; Gilbert v. Gilbert, Fla.App. 1966, 187 So.2d 49; Stewart v. Preston, 1920, 80 Fla. 473, 86 So. 348, whereby the policy of liberal amendments is discussed and highlighted. For federal cases holding a like view, see Dunham v. Innerst, 1970, M.D.Pa., 50 F.R.D. 372; Infotronics Corporation v. Varian Associates Corporation, S.D.Texas 1968, 45 F.R.D. 91 and Adams v. Beland Realty Corporation, E.D.N.Y. 1960, 187 F. Supp. 680.
On April 23, 1970, the trial court did an about face and entered the appealed order. Among other things, it set aside the final judgment; set aside the February 23rd order granting the post trial amendment, quoted earlier; granted the defendants a new trial; and granted leave to the plaintiff to amend his complaint as he had unsuccessfully attempted the day of trial. In substance, this decision was based upon the trial court's notion that it was divested of jurisdiction when the earlier mentioned interlocutory appeal was filed. It felt "This court [meaning trial court] committed fundamental error when it continued to try the case. It should have stayed the trial until the matter on appeal was finally ruled upon by the appellate Court." We are of the opinion that this order was erroneously conceived and entered.
Two observations may be made. First, the appeal of the initial denial of the motion to amend was patently ill founded inasmuch as it was an attempted interlocutory appeal from an action formerly cognizable on the law side of the court, which order did not relate to venue or jurisdiction, *903 and neither was it of such nature as to be reviewable by common law certiorari. Rule 4.2, Florida Appellate Rules, 32 F.S.A.
The action was not stayed and supersedeas was not granted upon the filing of the interlocutory appeal. We note from Rule 5.1, Florida Appellate Rules, that such action is discretionary with the trial court and we record that no abuse of that discretion has been demonstrated.
Assuming arguendo the propriety of an interlocutory appeal in this case, we believe the law of this state as to further trial proceedings was basically stated in State v. Robles, Fla. 1933, 147 So. 910, as follows:
"... [S]ince a supersedeas is ordinarily to stay or suspend the execution of a decree already rendered, and not to suspend other proceedings in the cause further adjudicating the rights of the parties, unless to do so would, in effect, be carrying out the order of court that is superseded, that when an appeal is taken from an interlocutory order in an equity case, ... providing in general terms that the appeal taken shall operate as a supersedeas in the cause, that the appeal taken operates only as a supersedeas of the interlocutory order appealed from, and does not necessarily bar the right of the parties to otherwise proceed with the litigation in the court below in so far as such litigation may be lawfully proceeded with in due course, without having to depend upon the superseded order appealed from in order to justify such further proceedings as being according to law and equity practice. Continental National Building & Loan Ass'n v. Scott, 41 Fla. 421, 26 So. 726. The real effect of an appeal with supersedeas is to suspend the power of the court below to make any order tending towards an extension or enforcement of the order appealed from. Carr v. Marion Mortgage Co., 99 Fla. 540, 128 So. 12. It does not interfere with the power of the court of original jurisdiction to make such further orders or decrees in the cause as do not tend toward an execution or enforcement of the order or decree appealed from, nor place the funds or property involved beyond the judgment or decree of the appellate court. McKinnon-Young Co. v. Stockton, 53 Fla. 734, 44 So. 237." (Emphasis supplied.)
See also Sunrise Beach, Inc. v. Phillips, Fla.App. 1965, 181 So.2d 169. For these reasons, we feel that the trial court had the jurisdiction to proceed with the trial and that it was no violation of discretion or law for him to do so under these circumstances.
With this treatment and approval of the amendment in names, the appellate grievance of The Atlantic Chemicals, Inc. evaporates.
The order appealed is reversed and the cause remanded with instructions to reinstate the final judgment in favor of plaintiff, and to permit the amendment correcting the misnomer as reflected in the trial court's order of February 23, 1970.
Reversed and remanded with instructions.
MAGER, J., and MELVIN, WOODROW, Associate Judge, concur.