GRIFFIN, Judge,
concurring in part, dissenting in part.
The Moles filed suit in 1990 claiming, inter alia, that its lender breached their loan agreement by disbursing draws to the contractor in violation of an express draw schedule contained in the loan agreement.[1] Independence Mortgage Corporation of America (“old Independence”) was a subsidiary of First Federal, incorporated in 1986. On July 7, 1989 it entered into a loan agreement with the appellants, Thomas and Susan Mole. It immediately assigned this loan to First Federal on the same day. In August 1989, “old Independence” sold its name and certain assets to Loch Haven Mortgage Subsidiary Corporation, which then changed its own name to “Independence Mortgage Corporation of America.” “Old Independence” was renamed Academy Mortgage Corporation of America, after the sale of the name, and was voluntarily dissolved in 1991. The Mole loan was then assigned by First Federal to Loch Haven (“new Independence”) to service. It thus appears that this “new Independence” was not the entity that actually entered into the loan agreement with the Moles. Nevertheless, having repeatedly admitted, represented and acquiesced in the notion, over a four-year span of litigation, that it was the party that contracted with the Moles, “new Independence” cannot now avoid liability (if any there be) for claims arising out of the making of the loan by establishing that a different entity, “old Independence” was the true lender. See Sexton v. Panning Lumber Co., 260 So.2d 898 (Fla. 4th DCA), cert. denied, 271 So.2d 764 (Fla.1972). According to the record, new Independence retained employees of the old Independence, the president and director of new Independence had been the president of old Independence. The record shows that both “old Independence” and “new Independence” had the same counsel. Indeed, the law firm representing both Loch Haven and Independence in this litigation was the same firm that had represented both the old and new Independence. It even did the legal work that transferred the name from old Independence and created the corporation that became “new Independence.”
It is unclear whether the distinction between the actions of the old Independence and the acts of the new Independence was appreciated by the lawyer assigned to this litigation until shortly before the motion was filed four years into the lawsuit, or whether this four-year delay was a stratagem designed to permit the statute of limitations to expire or to otherwise avoid liability through the voluntary dissolution of “old Independence.” But intent really isn’t the issue. New Independence “knew” as a matter of law that it was not the Moles’ lender and under Florida law had a duty to say so. Where a corporate litigant has a relationship with another corporation that is so close and so confused that for a period of four years of litigation, even it, and its own counsel, cannot identify with any degree of accuracy what acts are its own and what acts are those of its predecessor, the law will not relieve them of their admissions. As between a plaintiff who has relied to his detriment on such admissions made in the course of litigation, and the defendant, which now believes it never committed some of the acts which are alleged by the plaintiff to be wrongful, the burden of this error should fall on the defendant — in this case “new Independence.” Accordingly, I would not affirm the summary judgment on the basis suggested by the cases relied upon by the majority. Although this is usually referred to as the law of “misnomer,”[2] it certainly is a form of estop-pel.

. Also alleged is a claim for fraud in the inducement. Given the nature of the dispute in this case, viz what the contract required in terms of draw disbursement there is no viable claim for fraud in the inducement. There was no evidence that First Federal made any representations with knowledge of their falsity.

. Sexton, 260 So.2d at 900.